IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LEMORIAL SILK, )<br>    Petitioner, )<br>)<br>v. )<br>)<br>HAROLD W. CLARKE, )<br>    Respondent. ) | Civil Action No. 7:21cv294<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION**

Lemorial Silk, a Virginia inmate proceeding *pro se,* has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the judgment of conviction entered against him by the Augusta County Circuit Court on June 28, 2019. The respondent has filed a motion to dismiss, and Silk has responded, making this matter ripe for disposition. After careful review of Silk's claims and the records from the state courts, the court concludes that the state habeas court's decision on each of the claims was neither contrary to nor an unreasonable application of clearly established federal law. Further, the state court's decision was not based on an unreasonable determination of the facts. For these reasons, explained more fully below, the court will grant the motion to dismiss.

I. BACKGROUND

On June 19, 2018, Silk was arrested on a warrant charging him with violation of Virginia Code § 18.2-248. Following the preliminary hearing, the Augusta County General District Court certified the case to the grand jury on the lesser-included charge of simple possession of methamphetamine. The Commonwealth's Attorney moved to nolle pros.[1] the simple possession

---

[1] "Nolle pros," a shortened form of the Latin phrase "nolle prosequi," refers to the Commonwealth's decision to dismiss the charges.

charge and sought a direct indictment against Silk for possession with intent to distribute methamphetamine, a schedule II-controlled substance, after having previously been convicted of a substantially similar offense, in violation of Virginia Code § 18.2-248(C). The grand jury indicted Silk on the more serious charge.

Silk, by counsel, moved the trial court to dismiss the indictment on the grounds that it failed to give adequate due process notice of the charges by failing to say when and where the earlier conviction for distribution/possession with intent to distribute occurred. Further, Silk alleged that the indictment was vindictive prosecution, seeking a higher penalty than the original charge, based upon Silk's exercise of his right to have the General District Court Judge reduce the original charge; his evidence of vindictiveness was his claim that he had never previously been convicted of a distribution-related offense. Silk also filed a motion to suppress his statements to Augusta County Sheriff's deputies (including his consent to search the car) on the grounds that he was not read his *Miranda*[2] rights, and to suppress evidence found during the search of his car and motel room as fruit of the poisonous tree.

Before the motions hearing and trial, the Commonwealth's Attorney moved to amend the indictment, dropping the allegation of a prior similar conviction. Although the NCIC printout listed a prior distribution conviction in 2001 in Ashland, Virginia, when the Commonwealth wrote the court there to request a certified copy of the conviction order, she was advised that no such conviction existed. The Virginia Department of Corrections printout indicated that Silk began serving a prison sentence for possession of cocaine around that time, not for distribution. The court granted the motion to amend the indictment, reducing the severity of Silk's potential

---

[2] In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court announced a rule requiring officers to advise suspects of their right to remain silent and right to have an attorney before conducting custodial interrogation.

penalty. The trial court denied the motion to dismiss the indictment, and after hearing evidence, the trial court also denied Silk's motion to suppress.

Silk elected to be tried by the court without a jury. The court arraigned him on the amended indictment, which charged that:

> LEMORIAL SILK did unlawfully and feloniously manufacture, sell, give or distribute or possess with intent to manufacture, sell, give or distribute a controlled substance, namely Methamphetamine, a Schedule I or II controlled substance, in violation of Virginia Code Section 18.2-248(C).

(CCR[3] at 127.) Before pleading "not guilty," Silk asked whether he had been arraigned on the amended charge, because he believed that subsection (C) imposed the enhanced sentence for second offenses. His counsel and the trial judge clarified that subsection (C) defined the offense, but provided different levels of punishment for first, second, and third offenses. (CCR at 188–189.) Silk entered his plea of "not guilty," and following the pretrial colloquy between the court and Silk, the evidence was presented. The Court of Appeals of Virginia later summarized the evidence as follows:

> On May 21, 2018, Investigator Rosemeier saw [Silk] driving a vehicle out of the parking lot of the Knights Inn Motel, which was an area known for drug activity. Investigator Rosemeier knew [Silk] because he had stopped [Silk] previously when he did not have a valid driver's license. Investigator Rosemeier checked [Silk's] information and determined that he still did not have a valid driver's license. A records (sic) check also revealed that the tag on [Silk's] vehicle was registered to a different vehicle; [Silk's] girlfriend, Loretta Dores, was in the front passenger seat. After receiving [Silk's] and Dores' consent, Investigator Rosemeier searched [Silk], Dores' purse, and the area where [Silk] was sitting in the vehicle. [Silk] had less than $100.00 on his person and did not have any scales in his possession. Under [Silk's] seat, Investigator Rosemeier found "a balled up toilet paper wrapper," which held two plastic bags containing a crystal substance and a glass smoking device; he

---

[3] All references to the criminal record in *Commonwealth v. Silk*, No. CR19000066, Augusta County Circuit Court, will be abbreviated to "CCR," with citation to the page numbers typewritten in the bottom right corner of each page.

3

also found a box of Ziploc bags. The crystal substance was tested and determined to total 10.02 grams of methamphetamine. [Footnote omitted.]

Investigator Rosemeier testified that based on his training and experience, narcotic distributors usually use plastic bags to package drugs for resale. In addition, based on his experience, Investigator Rosemeier opined that ten grams of methamphetamine was "indicative of distribution or a distribution amount" and worth approximately $1000 on the street. He explained that a typical user buys in small quantities, such as a gram or half of a gram; even a heavy user generally consumes approximately three and four grams a day.

Investigator Mikolay arrived and spoke with [Silk] after advising him of his *Miranda* rights. [Silk] informed Investigator Mikolay that he was a "chronic meth user" and that he had purchased methamphetamine the previous night.

Investigators Rosemeier and Mikolay, [Silk], and Dores then went to the motel room where [Silk] and Dores were staying. [Silk] and Dores consented to the police entering and searching their motel room. The police recovered a bag containing [Silk's] social security card and identification, as well as several small plastic zippered bags. Investigator Rosemeier described the bags as small "jeweler style" bags, which are typically used by drug users and distributors. Investigator Rosemeier opined that the quantity of drugs found and the packaging materials were indicative of narcotics distribution.

At the conclusion of the Commonwealth's evidence, Dores testified that [Silk] was a "heavy" drug user, not a drug dealer. Dores testified that the drugs found in the vehicle did not belong to her. [Silk] testified that he intended to use, not sell, the ten grams of methamphetamine found in the car, and he admitted that the pipe belonged to him. He stated that he smoked between four and five grams in a night and that he paid approximately $300 for the ten grams.

*Silk v. Commonwealth*, No. 1077-19-3, slip op. at 2–3 (Va. Ct. App. March 31, 2020).

The trial court ultimately convicted Silk of possession with intent to distribute. Silk opted not to request a presentence report. The Commonwealth Attorney had prepared sentencing guideline worksheets, and the court confirmed that the guidelines were based on a first

4

conviction for possession with intent to distribute. The recommended sentence under the voluntary guidelines ranged from 5 years, 8 months to 9 years, 3 months, with a midpoint of 7 years, 7 months. (CCR at 98.) The court imposed a sentence of 20 years, but suspended 14 years, leaving an active sentence of 6 years, close to the bottom of the guideline range.

Silk appealed his conviction and sentence to the court of appeals, challenging the sufficiency of the evidence to convict him for intent to distribute, denial of his motions to dismiss, and denial of his motion to suppress. In its opinion of March 31, 2020, the court denied his appeal. The court also granted defense counsel's *Anders*[4] motion to withdraw and advised Silk that he had to proceed without counsel in any further proceedings. Silk did not appeal to the Supreme Court of Virginia.

Less than a month after the court of appeals denied Silk's appeal, Silk filed a petition for habeas corpus in the Supreme Court of Virginia, raising the following issues:

(1) Prosecutorial vindictiveness, in violation of Fourteenth Amendment due process rights;

(2) Prosecutorial misconduct, in bringing an improper indictment and suborning false testimony in violation of Fourteenth Amendment due process rights;

(3) Because Silk was questioned without proper *Miranda* warnings, in violation of his Fifth and Sixth Amendment rights, the search of his vehicle and hotel room were inadmissible fruit of the poisonous tree;

---

[4] An *Anders* motion is named after *Anders v. California*, 386 U.S. 738, 744 (1967), in which the Court explained the minimum procedure that must be followed to protect an indigent defendant's appeal: "[I]f counsel finds his case to be wholly frivolous after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must . . . be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Id.* The *Anders* Court further held that the indigent defendant had to be given the right to submit any additional arguments he wished to make, and then the court had to examine the full case on its own to see if there is any merit in the appeal. If the appellate court finds the appeal wholly frivolous, it can then grant the motion to withdraw and dismiss the appeal. If the court finds an arguable issue, it must provide counsel for the defendant to argue the issue for the defense before rendering a decision on the merits. *Id.*

(4) Ineffective assistance of trial counsel in failing to object to an improper indictment and amendment, to Silk's prejudice;

(5) Ineffective assistance of counsel in failing to object to the Commonwealth's failure to introduce any photos into evidence of the alleged drugs found in his vehicle; and

(6) Prosecutorial misconduct in allowing Deputy Rosemeier to deceive the trial court by saying he had pictures of the drugs found in Silk's car, even though the pictures were not brought to trial.

(Pet. at 6, Dkt. No. 1.)

On claims 2 and 6, the state habeas court held that these issues should have been raised on direct appeal but were not. Under the rule in *Slayton v. Parrigan*, non-jurisdictional issues that could be raised during the appeal process are not cognizable in a petition for habeas corpus. *Slayton*, 205 S.E.2d 680, 682 (Va. 1974). Likewise, claims 1 and 3, though raised in the trial court and court of appeals, were not raised in the Supreme Court of Virginia on direct appeal, and, accordingly, they were also defaulted, as habeas is not to be used as a substitute for the appellate process. The state habeas court found claims 4 and 5 to be without merit. Accordingly, the court dismissed Silk's habeas petition. *Silk v. Clarke*, No. 200546 (Va. April 1, 2021).

Silk timely filed the current § 2254 petition on May 10, 2021, raising the same six issues raised in his state petition.

## II.   DISCUSSION

**A.  Standard of Review**

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2254(a). Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A federal district court reviewing a § 2254(a) petition is also limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. The standard of review and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

When reviewing counsel's performance, courts apply a highly deferential standard. A petitioner must show that (1) counsel's performance was so deficient that she was not functioning as counsel guaranteed by the Sixth Amendment *and* (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must meet both prongs of the test. Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategy decisions. *Id*. at 689–90. To establish prejudice under *Strickland*, Silk must show that there was "a reasonable probability that the outcome of the proceedings would have been different," which means "a probability sufficient to undermine confidence in the outcome."

7

*Id*. at 694. The *Strickland* standard is "doubly deferential" in the context of a habeas petition because the deferential standard of review required by § 2254 overlaps with the deferential standard under *Strickland*. *Woods v. Etherton*, 578 U.S. 113, 1151 (2016); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). In other words, federal courts on habeas review are to give the benefit of the doubt to both the state court and the defense attorney. *Woods*, 136 S. Ct. at 1151.

**B. Procedurally Defaulted Claims**

If a state court has clearly and explicitly denied a petitioner's claim based on a state procedural rule that provides an independent and adequate ground for the state court's decision, that claim is procedurally defaulted for purposes of federal habeas review. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A state procedural rule is independent if it does not depend on a federal constitutional ruling, and it is adequate if it is firmly established and regularly applied by the state court. *Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1998). A claim that has not been presented to the highest state court and would be procedurally barred as untimely or successive if the petitioner tried to present the issue to the state court now is considered simultaneously exhausted and defaulted. *Bassette v. Thompson*, 915 F.2d 932, 936–37 (4th Cir. 1990).

The state habeas court held that Silk defaulted his three claims alleging prosecutorial misconduct and his claim alleging violation of his *Miranda* rights and subsequent search of his car and motel room, relying on *Slayton v. Parrigan*, because none of those issues were litigated in the Supreme Court of Virginia on direct appeal; the time for filing a direct appeal to the state's highest court expired more than two years ago, on April 30, 2020. *Slayton*, 205 S.E.2d 680, 682 (Va. 1974). The rule in *Slayton* has long been recognized as an adequate and independent state-law basis for denying a habeas claim. *E.g., Murray v. Giarratano*, 492 U.S. 1, 25 n.15 (1989)

8

(Stevens, J., dissenting); *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Reid v. True*, 349 F.3d 788, 804–06 (4th Cir. 2003); *Mu'Min v. Pruett*, 125 F.3d 192, 194 (4th Cir. 1997).

Before a federal habeas court will consider a procedurally defaulted claim, the prisoner must show both cause for the default and actual prejudice from the claimed federal violation. *Coleman*, 501 U.S. at 750. Cause for procedural default requires the existence of some objective factor, external to the defense and not fairly attributable to the prisoner. *Id.* at 756–57. To show prejudice to overcome procedural default, a petitioner must show that the claimed violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Silk has established neither cause for nor prejudice from his default of these four issues.

1. **Prosecutorial misconduct – claims 1, 2, and 6**

Silk's first claim of prosecutorial misconduct alleges vindictiveness. He raised this claim in a motion to dismiss in the trial court and in his appeal to the Court of Appeals of Virginia. However, by not pursuing a further direct appeal in the Supreme Court of Virginia, he defaulted the claim. He has not offered any reason for failing to pursue that appeal, other than the withdrawal of his attorney. Conduct of the defense attorney, even if negligent (which his withdrawal was not), is generally ***not*** adequate cause for default. *Murray v. Carrier*, 477 U.S. 478, 486 (1986). Nor is the absence of counsel cause for procedural default when there is no legal right to counsel at that stage of the proceeding. *Coleman*, 501 U.S. at 752. A defendant has a constitutional right to counsel at his initial appeal, but there is not a constitutional right to counsel at subsequent discretionary appeals. *Wainwright v. Torna*, 455 U.S. 586, 587 (1982) (per curiam); *Ross v. Moffitt*, 417 U.S. 600, 612 (1974); *Folkes v. Nelsen*, 34 F.4th 258, 273–74 (4th Cir. 2022). Besides, Silk filed his state habeas petition ten days before the deadline for

9

appealing the appellate decision, so he cannot say he did not have time to present the same argument on direct appeal as he made in his habeas petition.

Although absence of cause alone is sufficient to deny federal habeas relief on this defaulted claim, the court will address the lack of prejudice as an additional reason for its holding. Within the context of overcoming procedural default, a petitioner must show that a constitutional error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170. Silk cannot meet this standard because there was no constitutional error.

Silk alleges that the direct indictment for possession with intent to distribute methamphetamine, second offense, was vindictive retaliation for his success in persuading the general district court that the Commonwealth did not establish probable cause for "intent to distribute" at the preliminary hearing. As a matter of law, Silk is incorrect. The Supreme Court of Virginia has already held that there is nothing improper about seeking a direct indictment for possession with intent to distribute when a district court found probable cause only for simple possession. *Herrington v. Commonwealth*, 781 S.E.2d 561, 562–63 (Va. 2016). Even if the district court completely dismisses a charge, finding no probable cause, the prosecutor can seek direct indictment for the charge dismissed in district court, and there is no prosecutorial vindictiveness in doing so. *Moore v. Commonwealth*, 237 S.E.2d 187, 191 (Va. 1977). The Commonwealth can also seek a direct indictment on a charge more serious than the one presented at the preliminary hearing. *Waye v. Commonwealth*, 251 S.E.2d 202, 206 (Va. 1979) (after preliminary hearing on arrest warrant charging first-degree murder, Commonwealth obtained direct indictment for capital murder).

The reason for the court's approach to this issue is the recognition that the legislature has established the preliminary hearing in general district court as a screening hearing, the sole purpose of which is to determine whether there is probable cause to believe that a crime has been committed and the accused is the person who committed it. *Moore*, 237 S.E.2d at 190. The preliminary hearing protects the accused from oppressive restrictions on his liberty following arrest when no indictment has been returned. Criminal prosecution may be initiated by arrest warrant based on the affidavit presented to a magistrate or by arrest upon an indictment. The accused cannot be tried on a felony offense until he has been indicted. A preliminary hearing is required only if the accused has been arrested, but not yet indicted. *Id.* By statute, the prosecutor is allowed to seek indictment on a charge even when a previous grand jury declined to indict. Va. Code § 19.2-203. There is no difference between seeking the same indictment a second time and seeking an indictment after the district court fails to find probable cause. *Moore*, 237 S.E.2d at 394.

Likewise, in the absence of proof of actual vindictiveness, a prosecutor is "not bound by his initial assessment of the case" in the original charges. *United States v. Williams*, 47 F.3d 658, 664 (4th Cir. 1995). Before trial, the prosecution may have other information which causes it to reexamine the charges and request indictment on more serious charges. *Id.* at 664–65. The choice of charges to bring against a defendant is within the state's discretion, although there are constitutional limits on the exercise of that discretion. *Barrett (Clark) v. Commonwealth*, 585 S.E.2d 355, 362 (Va. Ct. App. 2003). The choice to prosecute cannot be based on an impermissible criterion, such as race, religion, or the accused's exercise of a constitutional right. *Id.* There is no evidence of such improper motive here. Silk had not exercised a constitutional right that he was penalized for; the government simply did what the law allowed it to do: Seek

an indictment, based on probable cause, for possession with intent to distribute. To prove vindictiveness, Silk would need some evidence of vindictiveness sufficient to overcome the presumption of prosecutorial regularity. *Id.* at 397. The record contains no such evidence. Thus, on claim 1, Silk fails to establish either of the requirements to overcome his default.

Claims 2 and 6 involve issues that were not raised in the trial court or on direct appeal, so they were defaulted in state court under *Slayton*. As with claim 1, Silk has not established good cause for failing to raise his objection to the prosecutor's "false testimony" or to Deputy Rosemeier's alleged false testimony that he had pictures of stuff in the car. His trial attorney's failure to object to Rosemeier's testimony is not good cause. *Murray*, 477 U.S. at 486. His appellate attorney's failure to raise the issue in his *Anders* brief is not good cause. Finally, his failure to raise the issue himself in his *pro se* brief is not cause, as he was present and aware of what happened during the trial and could have raised the issues on appeal.

Nor is there any prejudice to Silk. There is no prejudice because the prosecutor did not make false statements to the court. She advised the court that his printed record from VCIN showed a prior conviction for possession with intent to distribute, and that is exactly what the printout shows. (CCR at 301.) She also acknowledged that the Hanover County Circuit Court had no record or knowledge of such a conviction, and that is why she moved to amend the indictment by removing the second offense language. She calculated the guidelines based on a single count of possession with intent to distribute, with no prior charges for the same offense. She stated her belief that the wrong court had been entered into the NCIC, leaving her unavailable to prove the conviction with a certified copy of the order. (*Id.* at 289–291.) Defense counsel vigorously advocated that the unproved charge not be counted against Silk. *Id.* Because the prior charge was not used to enhance his sentence under the amended indictment, nor was it

12

used to increase the sentencing range recommended by the sentencing guidelines, Silk suffered no actual disadvantage at all. Silk has failed to overcome his procedural default on claim 2.

Likewise, there is no prejudice from Rosemeier's testimony regarding photographs. The question and answer proceeded as follows:

> MR. LITTLE . . . . You have pictures of what you found back in the hotel room, (sic) do you have pictures of what you found in the vehicle?
>
> INVESTIGATOR ROSEMEIER: ***I don't,*** they were collected, they were submitted into evidence and they are currently in our evidence at the Sheriff's Office.
>
> \* \* \* \*
>
> Q. Okay. Now you say that you've got the picture of the drugs back at the office, (sic) you don't have it here with you today.
>
> A. No, I don't have a picture of the drugs at the office. The drugs are physically at the office.

CCR at 226–227. Rosemeier never said he had pictures of the car; to the extent that his language contained the vague reference "they" [were collected and are currently at the Sheriff's Office], any confusion was promptly clarified within one page of the transcript. A critical element of perjury is that someone *willfully* swears falsely. *Pijor v. Commonwealth*, 808 S.E.2d 408, 414 (Va. 2017). Willful means that the conduct must be knowing or intentional, rather than accidental, and must be done without justifiable excuse. *Correll v. Commonwealth*, 607 S.E.2d 119, 124 (Va. 2005). Taken in context, nothing in this exchange establishes an intentional misstatement by Rosemeier. Because there was no perjury, there was no prosecutorial misconduct in suborning same and no prejudice to Silk. He has failed to overcome procedural default on claim 6.

2. **Motion to suppress – claim 3**

As with his prosecutorial vindictiveness claim, Silk defaulted this issue by failing to pursue a direct appeal to the Supreme Court of Virginia. As discussed above, he has provided no cause for his default. Further, he cannot demonstrate prejudice because the trial court did not err in permitting the introduction of evidence from Silk's car and motel room.

Silk argues that his consent to the search of his vehicle was requested (and given) before he was read his *Miranda* rights. He spends a fair amount of space discussing the caselaw supporting his assertion that he was "in custody" when Rosemeier asked to search his vehicle. Custody is only half the issue, however. *Miranda* prohibits the introduction of statements made in response to custodial *interrogation* without benefit of *Miranda* warnings. A question posed to a suspect in custody amounts to interrogation for *Miranda* purposes if it is reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). Although the Fourth Circuit Court of Appeals has not addressed the issue, the United States District Court for the Eastern District of Virginia has previously held that requesting consent to search is not interrogation, and *Miranda* warnings are not required for a valid consent to search. *United States v. Guess*, 756 F. Supp. 2d 730, 745–46 (E.D. Va. 2010). Several circuit courts addressing the issue have agreed. *See, e.g., United States v. Stevens*, 487 F.3d 232, 242–43 (5th Cir. 2007); *United States v. Smith*, 3 F.3d 1088, 1098 (7th Cir. 1993); *United States v. McCurdy*, 40 F.3d 1111, 1118 (10th Cir. 1994).

Silk also contends that his consent to search was not voluntary because he was in custody when he gave the consent, without benefit of *Miranda* warnings. Voluntariness of consent is a Fourth Amendment issue, which is not cognizable on federal habeas review if the defendant had a full and fair opportunity to raise the Fourth Amendment claim in the highest state court. *Stone*

*v. Powell*, 428 U.S. 465, 494 (1976). That Silk did not litigate the voluntariness issue in a direct appeal to the Supreme Court of Virginia is irrelevant because he had the opportunity to do so. *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978). Whether or not he exercised the opportunity, the availability of procedures for raising Fourth Amendment issues in state court precludes consideration of this issue on habeas review.[5]

Because his *Miranda* argument lacks merit and his Fourth Amendment voluntariness argument cannot be considered on habeas review, Silk cannot establish that he has been prejudiced by his procedural default. He has failed to overcome his procedural default of the issue.

## C. Claims Reviewed on the Merits

Silk's remaining two claims, 4 and 5, were considered on the merits by the Supreme Court of Virginia and are reviewed using the doubly deferential standard required by § 2254(d) and *Strickland*, as discussed in II.A above.

### 1. Counsel's failure to object to the indictment and its amendment

The state habeas court found that Silk established neither deficient performance nor prejudice, both of which are required by *Strickland* for claims of ineffective assistance of counsel. The state court's decision was based on a reasonable determination of the facts and a reasonable (and correct) application of federal law.

The state court found as a factual matter that defense counsel did object to the indictment, raising several arguments, including that the enhanced penalty was motivated by vindictiveness. Because counsel argued the objection, there was no deficient performance. Further, the

---

[5] Further, the Supreme Court has already rejected Silk's argument, holding that the Fourth Amendment does not require that a lawfully seized defendant be released before his consent to search will be voluntary. *Ohio v. Robinette*, 519 U.S. 33, 35 (1996).

Commonwealth moved to amend the indictment by striking the allegation that Silk had previously been convicted of a distribution offense. *Silk v. Clarke*, No. 200546, slip op. at 3. Because the state habeas court properly and reasonably found no deficient performance or prejudice regarding counsel's objection to the indictment, the first portion of this claim must be dismissed.

The state habeas court also found that counsel did not object to the amended indictment, but he inquired about whether subsection (C) of Virginia Code § 18.2-248 should remain in the indictment. Stating that Silk had not provided any other objection that counsel could have made to the amended indictment, the court reasonably and properly held that counsel's performance was not deficient. *Silk v. Clarke*, slip op. at 3. Because the amendment was beneficial to Silk, removing the second offense language, the court found no prejudice from counsel's failure to object to the amendment.[6] The state court also found Silk's argument that the reference to subsection C should have been removed to be frivolous. *Id.* at 4.

Silk continues to maintain that he was somehow subjected to the enhanced penalty for a second distribution because of the reference to subsection C. Perhaps his myopic focus on this issue is because the original arrest warrant did not list a subsection, and he never saw a

---

[6] Silk also suggests that he was prejudiced because his guidelines were calculated as if he were a second offender. The state habeas court's determination that his guidelines were correctly calculated is a reasonable determination of fact. On Section A, he received 12 points for one count of possession with intent to distribute (PWID); those 12 points automatically took him to Section C. On C, he received 60 points for one count of PWID; had he been convicted on one count PWID, second offense, he would have received 110 points for the primary offense. He qualified as a Category I offender because of his prior robbery convictions. He got 15 points based on the maximum penalty possible for his five most serious prior convictions: 4 points on each of two robbery convictions, 4 points on a breaking and entering, 2 points on a grand larceny auto, and 1 point for a simple possession of heroin. He also got 3 points for two prior drug convictions (possession of heroin and possession of cocaine), 9 points for having four or more felony convictions against a person (3 robberies and one burglary), 1 point for a prior felony property offense (grand larceny), and 3 points for being on good behavior for a misdemeanor conviction in Rockingham County.

subsection listed until the direct indictment issued. To reassure Silk as fully and clearly as possible, the court quotes below the exact wording of the statute, as relevant to this issue:

> A. Except as authorized in the Drug Control Act (§54.1-3400 et seq.), it shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance.
>
> B. \* \* \* \*
>
> C. Except as provided in subsection C1, *any person* who violates this section with respect to a controlled substance classified in Schedule I or II shall upon conviction be imprisoned for not less than five nor more than 40 years and fined not more than $500,000. *Upon a second conviction of such a violation, **and** it is alleged in the warrant, indictment, **or** information that person has been before convicted of such an offense or of a substantially similar offense in any other jurisdiction,* which would be a felony if committed in the Commonwealth, and such prior conviction occurred before the date of the offense alleged in the warrant, indictment, or information, any such person may, in the discretion of the court . . . imposing the sentence, be sentenced to ***imprisonment for life*** *or for any period not less than five years,* ***three of which shall be a mandatory minimum term of imprisonment*** *to be served* ***consecutively with any other sentence*** . . . .
>
> When a person is convicted of a third or subsequent offense . . . he shall be sentenced to imprisonment for life or for a period of not less than 10 years, 10 years of which shall be a mandatory minimum term of imprisonment to be served consecutively with any other sentence . . .

Va. Code § 18.2-248 (2014 Rev.) (emphasis added). Clearly, subsection C provides the different punishments for anyone convicted of distributing a Schedule I or II controlled substance, whether first time (5 to 40 years), second time (mandatory minimum 5 years to Life), or third or subsequent time (mandatory minimum 10 years to Life). Further, to get the enhanced penalty, the indictment would have to include the language that he had been convicted of such an offense before. Once that language was removed from the indictment, the only penalty applicable was

17

five to 40 years. The indictment needed only to cite Code § 18.2-248, but subsection C stated the penalty, no matter how many prior convictions a defendant had or did not have. The court cannot grant relief on claim 4.

### 2. Counsel's failure to object to the absence of pictures of the drugs in his vehicle

The state habeas court held that counsel's failure to object to the absence of photographs of the drugs in the car was neither deficient performance nor prejudicial. The court's decision is a reasonable application of the law. *Strickland* advises that a court reviewing counsel's performance must presume that an attorney's decisions and actions fell within the wide range of reasonable strategy decisions. 466 U.S. at 689–90. Strategy decisions committed to the sound discretion of counsel include what evidentiary objections to raise. *Gonzalez v. United States*, 553 U.S. 242, 248 (2008). Further, defense counsel is not required to make frivolous objections. *United States v. Mason*, 774 F.3d 824, 833 (4th Cir. 2014).

Objecting to the absence of photographs would have been frivolous because a prosecutor is not required to introduce photographs. A prosecutor may offer any admissible, relevant evidence to support her case. Va. R. S. Ct. Rule 2:402. The factfinder is the one who determines whether the introduced evidence persuades beyond a reasonable doubt. As long as the evidence, in the light most favorable to the prevailing party, is sufficient to support each element of the offense, a reviewing court may not re-weigh that evidence. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Further, the testimony of a single witness can be sufficient. *Commonwealth v. McNeal*, 710 S.E.2d 733, 736 (Va. 2011). Because photographs were not required by law to be introduced and the evidence was sufficient to support Silk's conviction without photographs, there was no prejudice resulting from counsel's failure to object. This claim will also be dismissed.

III.  CONCLUSION

Further, when issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability.  Fed. R. Gov. § 2254 Cases 11(a).  A certificate of appealability may only issue if the movant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right.  Silk has not made such showings in this case.

For the reasons stated above, the court will grant the respondent's motion to dismiss, dismiss the petition for a writ of habeas corpus, and deny a certificate of appealability.

An appropriate order will be entered.

Entered: July 12, 2022.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge